**Andrew JOHNSON; Oscar J. Harp, III, Appellants**

v.

**DISTRICT OF COLUMBIA, Appellee**

**No. 15-7048**
**September Term, 2016**

United States Court of Appeals, District of Columbia Circuit.

Filed On: March 28, 2017

Rehearing En Banc Denied June 6, 2017

Andrew Johnson, Pro Se

Oscar J. Harp, III, Pro Se

Loren L. AliKhan, Deputy Solicitor General, Holly Michelle Johnson, Assistant Attorney General, Todd Sunhwae Kim, Solicitor General, Richard Stuart Love, Assistant Attorney General, Karl A. Racine, Office of the Attorney General, District of Columbia, Office of the Solicitor General, Washington, DC, for Defendant-Appellee

Ruthanne Mary Deutsch, Attorney, Hyland Hunt, Attorney, Deutsch Hunt PLLC, Washington, DC, Appointed Amicus Curiae for Appellant

Before: Henderson, Tatel, and Srinivasan, Circuit Judges.

## JUDGMENT

Per Curiam

This appeal from the United States District Court for the District of Columbia's order granting defendant's motions for summary judgment was presented to the Court and briefed and argued by the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the District Court's April 17, 2015 order be affirmed.

Appellants in this case, Andrew Johnson and Oscar J. Harp, III, two school psychologists, were terminated by the District of Columbia Public Schools (DCPS) in 2011 and 2010, respectively. Appellants brought this suit alleging they were fired because of their age, in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-34. The district court granted summary judgment in the District's favor as to both Johnson and Harp. We affirm the district court's decision.

Beginning in the 2009-10 academic year, DCPS implemented the IMPACT system, a new program for evaluating teachers and other school employees, including school psychologists. Under that system, school psychologists receive scores on several components, including their professionalism, the timeliness of student assessments

they submit via an online database, and the standards of services they provide. Psychologists are subject to termination if their overall IMPACT score puts them in the "Minimally Effective" category for two consecutive academic years or the "Ineffective" category after one year.

Johnson was fired in the summer of 2011 after receiving Minimally Effective ratings for two consecutive academic years. He filed an appeal challenging his score with the Chancellor's Impartial Review Board, but the appeal was denied. Harp was fired in July of 2010 after receiving an Ineffective rating for the 2009-10 school year. He appealed his termination to the Office of Employee Appeals, which ruled in his favor on the ground that DCPS had failed to adhere to IMPACT processes and that he was prejudiced as a result. The Office of Employee Appeals ordered DCPS to reinstate Harp and awarded him back pay and attorney's fees.

Both Johnson and Harp claim they were fired not because of their low IMPACT scores, but because of their age, in violation of the ADEA. *See* 29 U.S.C. § 623. The district court rejected their claims, and we agree. Because DCPS articulated a "legitimate, non-discriminatory reason" for firing appellants—their low IMPACT scores—the merits of their respective claims, under our decisions, narrow down to "one central question": Have they "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee[s]"? *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also DeJesus v. WP Co. LLC*, 841 F.3d 527, 532-33 (D.C. Cir. 2016). We conclude they have failed to do so.

We begin with Johnson's claim. He first argues that DCPS's stated reason for firing him was pretextual. To that end, Johnson contends that DCPS violated its procedures when, in calculating his timeliness score concerning his assessment reports in 2010-11, it included his report for a particular student, J.F. If that report had been excluded from his score calculation (or had been marked as timely), Johnson would have received a perfect timeliness score, and his overall IMPACT score would have provided no basis for terminating him. Johnson argues that his supervisor, Jamila Mitchell, violated multiple procedures with regard to Johnson's report concerning J.F. Johnson asserts, specifically, that Mitchell: ordered Johnson to complete J.F.'s report at a time when J.F. was not part of Johnson's caseload, ignored entries in Johnson's communications log documenting his initial difficulty reaching J.F., failed to adjust the date J.F. was supposed to be added back to Johnson's caseload, and failed to correct the Review Board's understanding of what occurred.

Contrary to Johnson's argument, Mitchell's and DCPS's actions concerning J.F.'s report afford an insufficient basis for inferring that DCPS's stated rationale was pretextual. Employees can attempt to show that an employer's articulated reason is pretextual by disputing the factual basis for the employer's decision. In that situation, though, the key question is "whether *the employer honestly and reasonably believed* that the underlying [facts justifying the employment action] occurred." *Brady*, 520 F.3d at 496; *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Here, the record indicates that Mitchell requested J.F. be added back to Johnson's caseload at the same time she asked Johnson to complete J.F.'s report, and that, in the online database, J.F. ultimately appeared to be assigned to Johnson. In those circumstances, there is an inadequate basis for a jury to find that

Mitchell and DCPS were dishonest or unreasonable in their belief that J.F. was on Johnson's caseload when he completed his report for J.F., even if their belief in that regard was mistaken.

Additionally, although Johnson points to evidence that program managers (who did not calculate timeliness scores) believed that information from communications logs would be factored into the scores, there is little evidence that DCPS established any such procedure. Similarly, Johnson fails to point to "established procedures" requiring DCPS to adjust date-related information in the online database when a student is re-added to a psychologist's caseload. *Brady*, 520 F.3d at 495 n.3. The record likewise provides no basis to support Johnson's contention that Mitchell misinformed or improperly failed to advise the Chancellor's Impartial Review Board about J.F.'s report. For these reasons, there is insufficient evidence that DCPS's reliance on his timeliness score was pretextual.

Johnson also argues DCPS could not reasonably believe that his timeliness score was accurate because he had completed far more than the three assessments used to calculate that score. DCPS policy, however, stated that only assessments uploaded into the online database would be used to calculate the timeliness score. Furthermore, because Johnson failed to raise the issue before the district court, he cannot now argue that there were in fact more than three assessments in the database. *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 535 (D.C. Cir. 2003).

We are also unpersuaded by the additional evidence on which Johnson relies. Johnson first notes that Mitchell's supervisor, in excusing his failure to follow an order to confine his assessments to students on his caseload in 2009-10, stated that his noncompliance might have been due to "difficulties with modern technology." SJA 428. To the extent Johnson could demonstrate discrimination by relying on a statement made in his favor (excusing his noncompliance with an order), a reference to his difficulties with modern technology is not evidence from which a jury could reasonably find age discrimination. Johnson also claims Mitchell "kind of giggled" and told him he could retire when he asked her what to do about his poor IMPACT rating in June of 2011. SJA 239. Even assuming Mitchell was callous in making that statement and later lied in denying having made it, her statement is the type of isolated remark unrelated to the termination decision that is insufficient by itself to permit an inference of discrimination. *See Morris v. McCarthy*, 825 F.3d 658, 669 (D.C. Cir. 2016).

Johnson, finally, points to certain empirical evidence, but that evidence gets him no further. As an initial matter, Johnson failed to present two of the three items of empirical evidence in his opposition to summary judgment before the district court and points to no "exceptional circumstances" counseling that we nevertheless consider the evidence. *See Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009). Moreover, one of those two sets of data (a list of people hired by DCPS) is unpersuasive, as we explain below in rejecting Harp's reliance on the same evidence. Johnson's remaining evidence is an unsupported statement in his complaint that "many" terminated employees were "senior in age" and were replaced by younger employees. *See* Compl. ¶ 8. A party cannot, however, rely solely on its pleadings in opposing a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In short, none of the evidence relied on by Johnson constitutes a basis from which a reason-

able jury could conclude he was fired because of his age.

We reach the same conclusion with regard to Harp's claim, to which we now turn. As an initial matter, Harp's claim is not moot even though the Office of Employee Appeals ordered DCPS to reinstate Harp and award him back pay. He could still obtain additional remedies under the ADEA, including, for example, liquidated damages if he could demonstrate a "willful" violation of the ADEA. 29 U.S.C. § 626(b).

Harp's claim fails on the merits, however. In arguing that DCPS terminated him due to his age, Harp points to two procedural violations and a list of recent DCPS hires. First, Harp notes that his second evaluation was conducted by a program manager who had supervised him for fewer than 90 days, in violation of D.C. regulations. That procedural issue fails to provide evidence of discrimination because, to the extent the supervisor assessed him on factors beyond his written work, she found he met all applicable requirements. Second, Harp points to evidence that his first supervisor improperly evaluated him on several components of his IMPACT score based on only two full student assessments rather than the required five. He provides no basis for concluding, however, that the procedural violation is evidence of age discrimination. Finally, Harp relies on data supposedly showing that most DCPS new psychologist hires were under the age of 40. The data, though, is simply a list of employee identification numbers and birthdates. Many of the entries lack birthdates, and the document contains no analysis or context. In short, Harp fails to provide evidence from which a reasonable jury could infer he was fired on account of his age.

For all the foregoing reasons, we affirm the district court's order. We also deny appellants' motions to supplement the record and introduce a new theory of the case for the first time on appeal.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.